No. 15-1338

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**Martin P. Sheehan, Trustee of the**
**Bankruptcy Estate of AGS, Inc.,**
   *Appellant*

**v.**

**Allen G. Saoud**
   *Appellee*

## ON APPEAL FROM THE UNITED STATES
## DISTRICT COURT FOR THE NORTHERN DISTRICT
## OF WEST VIRGINIA - (Keeley, J.)

### BRIEF OF THE APPELLANT

**Martin P. Sheehan, Esq.**

**W.Va. Bar No. 4812**

**SHEEHAN & NUGENT, P.L.L.C.,**
**41 Fifteeenth St.**
**Wheeling, WV 26003**
**(304) 232-1064**
**(304) 232-1066 fax**

**Patrick S. Cassidy, Esq.**

**W.Va. Bar No. 671**

**Cassidy, Cogan, Shapell & Voegelin, L.C.**
**1413 Eoff St**
**Wheeling, WV 26003**
**(304) 232-8100**
**(304) 232-8200 fax**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1338__    Caption: __Sheehan v. Saoud, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Martin P. Sheehan_____
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.	Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.	Does party/amicus have any parent corporations?                                  ☐ YES ☑ NO
	If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.	Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                                        ☐ YES ☑ NO
	If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:

Martin P. Sheehan, Trustee

Signature: /s/ Patrick S. Cassidy      Date:      4/21/2015

Counsel for: Martin P. Sheehan

## CERTIFICATE OF SERVICE
**************************

I certify that on _____4/21/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Paul J. Harris, Esq.                      William Kolibash, Esq.
Harris Law Offices                        Phillips Gardill Kaiser & Altmeyer PLLC
32-15th Street                            61 Fourteenth Street
Wheeling, WV 26003                        Wheeling WV  26003

/s/ Patrick S. Cassidy                                    4/21/2015
_____                      _____
      (signature)                                         (date)

# Table of Contents

Table of Contents ............................................................................................. i

Table of Authorities ...................................................................................... iii

Statement of Jurisdiction ............................................................................... 1

Statement of the Issues .................................................................................. 1

Statement of the Case .................................................................................... 1

    The Bankruptcy of AGS, Inc. ................................................................... 2

    The Claims of the Bankruptcy Estate Asserted in District Court ............. 5

    Rulings of the District Court .................................................................... 10

Summary of the Argument ........................................................................... 11

Standard of Review ....................................................................................... 12

Argument ....................................................................................................... 13

    Did the District Court erred when it concluded that the Doctrine of
    Adverse Domination did not toll the Statute of Limitations/Repose
    under the West Virginia Uniform Fraudulent Transfer Act? ...................... 13

    Assuming that the doctrine of adverse domination should not apply as
    argued above, did the District Court err in applying the Statute of
    Limitations/Repose as construed by the District Court to find that
    evidence of a transfer in 2008 was outside the Statute of
    Limitations/Repose because it was a payment due under what
    purported to be a contract signed in 2005, even though said contract
    was illegal? ............................................................................................... 17

Did the District Court err in concluding that a cause of action for Civil Conspiracy under West Virginia law could not be based on a violation of the West Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove a subjective violation of said statute, that is with "actual intent to hinder, delay or defraud?".......................................21

Conclusion ...........................................................................................................23

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Cases**

Banco PopularNorth America v. Gandi,
        184 N.J. 161, 876 A.2d 253 (N.J. 2005)..........................................................22

Chepstow Limited v. Hunt,
        381 F.3d 1077 (11th Cir. 2004) ......................................................................22

Chu v. Hong,
        185 S.W.3d 507 (Tex. App., 2006) rev'd on other grounds,
        185 S.W.3d 441 (2008)....................................................................................22

Clark v. Milam,
        192 W.Va. 398, 452 S.E.2d 714 (1994) ....................................................13, 21

Clark v. Milam,
        872 F. Supp. 307 (S.D. W.Va. 1994) ........................................................14, 16

Diamond v. Vickery (In re: Vickery),
        No. 12-cv-01891-MSK (D. Colo., Jan. 26, 2014) ..........................................22

Farmers and Merchants National Bank v. Bryan,
        962 F.2d 1520 (10th Cir. 1990) ......................................................................15

Federal Deposit Insurance Corp. v. Appling,
        992 F.2d 1109 (10th Cir. 1993) ......................................................................15

F.D.I.C. v. S.Prawer & Co.,
        829 F.Supp. 439 (D. Me. 1993).......................................................................22

Fischer v. Brancato,
        147 S.W.3d 794 (Mo. App. 2004) ...................................................................22

Folmar & Associates, LLP v. Holberg,
        776 So.2d 112 (Ala. 2000)...............................................................................22

Guttman v. Construction Program Group (In re: Railworks Corp.),
        760 (F.3d 398 (4th Cir. 2014) .........................................................................12

In re: The Bankruptcy Estate of AGS, Inc.,
  No 14-1296 (April 4, 2014)(unpublished)........................................................2

Jakobitz v. Ron Horse Business Services, LLC,
  208 Or. App 515, 145 P.2d 277 (2006) ........................................................22

LaRosa v. LaRosa,
  Nos. 11-1234 and 11-1306 (April 30, 2012) ...........................................19, 20

McElhanon v. Hing,
  151 Ariz. 728 P.2d 256 (Ariz. App.1995), aff'd,
  151 Ariz. 403 (1986) .................................................................................22

Nicholas Loan & Mortgagem Inc. v. W.Va. Coal Co-Op, Inc.,
  209 W.Va. 296, 547 S.E.2d 234 (2001) ........................................................23

People's Loan Co. v. Allen,
  199 Ga. 637, 34 S.E.2d 811 (Ga. 1945) ........................................................22

United States v. Saoud,
  No. 14-4288 (Dec. 19, 2014)(unpublished)....................................................2

Valvanis v. Milgroom,
  529 F. Supp. 2d 1190 (D. Haw. 2007)..........................................................22

White v. Federal Deposit Insurance Corp.,
  122 F.2d 770 (4th Cir. 1941), cert denied,
  316 U.S. 672 (1942).................................................................................15

Wing v. Dockstader,
  No. 11-4006 (10th Cir., June 6, 2012)(unpublished) ....................................16

Wing v. Buchanan,
  No. 12-4123 (10th Cir. Aug. 9, 2013)(unpublished) ....................................16

**Statutes**

11 U.S.C. § 541(a)(1) ................................................................17

11 U.S.C. § 544(a)(2) ................................................................17

11 U.S.C. § 544(b)(1) ................................................................17

28 U.S.C. § 581 .........................................................................3

28 U.S.C. § 586 .........................................................................3

28 U.S.C. § 586(a)(1) ................................................................3

28 U.S.C. § 586(d) ....................................................................3

28 U.S.C. § 1291 .......................................................................1

28 U.S.C. § 1334 .......................................................................1

W.Va. Code § 30-14-9b(a) .......................................................19

W.Va. Code § 40-1A-1, et seq. .................................................7

W.Va. Code § 40-1A-1(*l*) .........................................................9

W.Va. Code § 40-1A-4(a)(1) ................................................21, 23

W.Va. Code § 40-1A-8(b) .........................................................10

W.Va. Code § 40-1A-9 .............................................................14

W.Va. Code 40-1A-10 ...............................................................22

W.Va. Code § 40-1A-11 ............................................................16

**Rule**

Fed. R. App. P. 4 .......................................................................1

## Statement of Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. § 1334. This Court

has jurisdiction from a final order under 28 U.S.C. § 1291. A final order was

entered on March 31, 2015. A timely appeal was filed under Federal Rule of

Appellate Procedure No. 4 on April 1, 2015.

## Statement of the Issues

Did the District Court err when it concluded that the Doctrine of Adverse
Domination did not toll the Statute of Limitations/Repose under the West Virginia
Uniform Fraudulent Transfer Act?

Did the District Court err in applying the Statute of Limitations/Repose as
construed by the District Court to find that evidence of a transfer in 2008 was
outside the Statute of Limitations/Repose because it was a payment due under what
purported to be a contract signed in 2005, even though said contract was illegal?

Did the District Court err in concluding that a cause of action for Civil
Conspiracy under West Virginia law could not be based on a violation of the West
Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove
a subjective violation of said statute, that is with "actual intent to hinder, delay or
defraud?"

## Statement of the Case

This litigation was brought by Martin P. Sheehan, Trustee of the Bankruptcy

Estate of AGS, Inc., as part of his duties to wind up the affairs of AGS, Inc. While

this litigation is an independent legal proceeding, the authority of the Trustee, and

his claim that equitable tolling should apply finds some basis in the bankruptcy

proceedings. Some of that review requires discussion of criminal conduct

1

uncovered as a result of the bankruptcy proceedings and for which Allen G. Saoud was convicted before the trial of the underlying case was begun.[1]

## The Bankruptcy of AGS, Inc.

Allen G. Saoud was a doctor of osteopathy in West Virginia. He originally founded the company which bears his initials, AGS, Inc. In 2009, Mr. Saoud[2] signed a chapter seven bankruptcy petition for that entity. (J.A. 49, 72). In the usual course of bankruptcy administration, he appeared for a meeting of creditors. (J.A. 49, 72).

At the meeting of creditors, Mr. Saoud reported he did not own AGS, Inc., anymore. He continued that he was not an officer or director. (J.A. 49, 72). Instead, without any documentation, he claimed that he was the former owner, and that the current owner, Georgia Daniel, was shy and had asked him to take care of the filing of the bankruptcy. (J.A. 49, 72).

---

[1] Allen G. Saoud was convicted of thirteen counts of health care fraud and nine related crimes. His conviction was affirmed by this Court in United States v. Saoud, No. 14-4288 (Dec. 19, 2014)(unpublished). The Bankruptcy Trustee sought a writ of mandamus to compel an award of mandatory restitution as part of the sentence. The request for a was denied. See In re: The Bankruptcy Estate of AGS, Inc., No 14-1296 (April 4, 2014).

[2] Allen G. Saoud lawfully practiced medicine for some time. He was entitled to be called doctor and might still be referred to in that manner. However, he has been stripped of his license to practice medicine. As a consequence, he is referred to simply as Mr. Saoud herein.

This is not the usual course of bankruptcy proceedings. Martin P. Sheehan, the Bankruptcy Trustee assigned to the case, asked Mr. Saoud to return at a later time with documentation. Mr. Sheehan reported this unusual testimony to attorneys in the office of the United States Trustee.[3]

Thereafter, the propriety of the filing by Mr. Saoud was examined. Mr. Saoud presented notarized documents purportedly signed by Ms. Daniel authorizing the filing of the case by Mr. Saoud. He persisted in his claim to not be currently involved with AGS, Inc. When contacted, Ms. Daniel said the signature was not hers. (J.A. 49-50, 72-73). However, while she asserted that she had not authorized the filing, she did not seek dismissal of the proceedings either.

Documents purporting to have transferred the interest of Mr. Saoud to Ms. Daniel in 2005 were examined. These proved to be very brief. (J.A. 62, 63, 64).They had not been prepared by or examined by an attorney on behalf of any party. These documents did not provide a definitive answer to ownership. While some transfer of ownership to Ms. Daniel seemed to be indicated, the transfer price was to be paid exclusively by AGS, Inc., and not by Ms. Daniel. The documents

---

[3]   There can be confusion about the use of the word, trustee, in the bankruptcy context. The United States Trustee is an employee of the United States Department of Justice charged with the responsibility, among other things, to supervise various aspects of the bankruptcy system. 28 U.S.C. § 581 and § 586.  A bankruptcy trustee for a particular Chapter 7 case is, absent the election of an alterative by creditors, a person on the panel of trustees of qualified private persons maintained by the United States Trustee under 28 U.S.C. § 586(a)(1) and (d).

suggested Ms. Daniel was to have no personal liability for payment. The documents provided that a substantial portion of the assets of AGS, Inc., would be reserved to Mr. Saoud.

The possibility that the purported transfer was merely a sham needed to be considered. In 2005, Mr. Saoud had agreed to a 10 year debarment from federal programs reimbursing health care providers to resolve over billing allegations. Clearly, Mr. Saoud was motivated to not appear to be billing such agencies. The apparent transfer of AGS, Inc., to Ms. Daniel while Mr. Saoud retained actual control suited that purpose as much as a real one.

Administration of the bankruptcy estate was significantly delayed by the confusion about filing. Attorneys with the United States Trustee asked the Mr. Sheehan to refrain from actively pursing claims against third parties pending a resolution of the legal difficulties associated with the filing. Ultimately, the attorney for the Debtor moved to dismiss the case. That action was opposed by both the Bankruptcy Trustee and the United States Trustee.[4] Because Mr. Saoud had maintained the position that he had no control of AGS, Inc, the Bankruptcy Trustee was forced to examine the alternatives. First, the Trustee asserted that Mr. Saoud was the true owner despite his protestations to the contrary and that as the

---

[4] When asked who directed the filing of the motion for dismissal, counsel for the entity said that he had decided to do so on his own to bring the matter to an

owner he had approved the filing. The other alternative was that Ms. Daniel was the true owner and she had ratified the filing by not authorizing dismissal. Ultimately, the Bankruptcy Court found that ownership and control were unclear. The Bankruptcy Court did not decide who had authorized the filing or how it had been accomplished. The Bankruptcy Court concluded instead that no person claiming to then own the business had authorized dismissal. The motion to dismiss was denied. (J.A. 65-71).

From that day forward, the Bankruptcy Trustee began to act on behalf of the estate using his full business discretion.

### The Claims of the Bankruptcy Estate
### Asserted in District Court

On October 13, 2011, the Bankruptcy Trustee sued everyone associated with the financial management of AGS, Inc., and to recover various associated transfers. (J.A. 20). Settlements were reached with Ms. Daniel and an accountant. (J.A. 7) Primarily liability against Mr. Saoud was sought to be established under the West Virginia Fraudulent Transfer Act and under principles of Civil Conspiracy. These claims arose out of the Bankruptcy Trustee's investigation of the financial affairs of AGS, Inc.

---

end. He was permitted to withdraw without an attorney entering an appearance on behalf of the Debtor.

The Appellant asserted there was a scheme to take the assets of AGS, Inc., for the benefit of Allen G. Saoud and others without paying the just debts of AGS, Inc. In so doing, AGS, Inc., was harmed because it was deprived of the ability to pay creditors, and to survive as an on going entity. The scheme had several parts and monies were taken from AGS, Inc., in various ways.

As noted above, Allen G. Saoud had agreed to be debarred from billing the federal government for providing medical services. That agreement was entered into on August 26, 2005. The debarment by the federal government increased the scrutiny that Mr. Saoud was under from other entities who paid for health care for patients, including Mountain State Blue Cross and Blue Shield (hereinafter referred to as Blue Cross and Blue Shield.) Mr. Saoud was notified that he was debarred from their programs retroactively to September of 2005, in early 2006.

Dr. Saoud did not honor his agreement with the federal government. But, he was motivated to make it look like he was honoring his agreement. He enlisted several people to aid him in his effort at deception. This included Georgia Daniel, a nurse practitioner.

To this end, Dr. Saoud and Georgia Daniel executed some documents regarding a transfer of AGS, Inc. The ostensible purpose of the documents was for Dr. Saoud to sell his interest in AGS, Inc., to Georgia Daniel. The effectiveness of the sale of a medical corporation to a nurse practitioner is uncertain. But, both Ms.

Daniel and Dr. Saoud did, at times, act as though the transfer had been effected. As part of the transfer, payments were made to Dr. Saoud that had the effect of limiting the ability of AGS, Inc., to pay its legitimate creditors.

Under the terms of the "sale" to Georgia Daniel, she was not going to be "personally liable." Instead, the only remaining entity, AGS, Inc., was going to be liable to pay $1,000,000 to Dr. Saoud. The corporate entity, AGS, Inc., was a volunteer in this transaction. It was not going to be the owner of the stock after the payments were made. It could not own itself. Documents provided that Georgia Daniel was going to be the owner. Dr. Saoud has agreed this sale was essentially a leveraged buy out.

Tax returns document that $ 250,000 was paid by AGS, Inc., to Dr. Saoud for the sale during 2006, 2007 and 2008. In 2008, the payment was $50,000. (J.A. 54-56). These funds were taken from AGS, Inc., without benefit to AGS, Inc. In part because of these distributions, AGS, Inc., was rendered insolvent and unable to pay its bills. The insolvency led to the filing of a bankruptcy petition. Appellant contended that the liability of Dr. Saoud for the sums transferred to him was clear under the West Virginia Uniform Fraudulent Transfer Act, W.Va. Code § 40-1A-1, *et seq.* Appellant sought recovery of this $250,000.

In addition, a certified copy of a deed recorded in the real estate records of Harrison County, WV demonstrates that real estate titled to AGS, Inc., was sold to

MedStar and Real Estate Development on March 23, 2005 for $460,000. (J.A. 52)
.Those proceeds were not paid to AGS, Inc., but were paid to another entity
controlled by Allen G. Saoud. This diversion of the proceeds was the diversion of
an asset of AGS, Inc. It came as the United States began the investigation that led
to Dr. Saoud's debarment. Dr. Saoud has acknowledged that he was aware of the
federal investigation in the last quarter of 2004. He was debarred on August 26,
2005. The Plaintiff claimed this real estate transfer and diversion of proceeds was a
fraudulent conveyance. While the interrogatories answered by the jury indicated
agreement, the manner in which the District Court applied the limitations of
actions provision of the West Virginia Uniform Fraudulent Transfer Act led to a
verdict for Mr. Saoud. Appellant sought recovery of this $460,000.

After the "sale," Georgia Daniel performed services as a nurse practitioner
which were billed through AGS, Inc. She did not accept a salary from AGS, Inc.
Had she done so, the salary payments would have been wages, and she could have
been compensated. Paying an employee, even an owner-employee, is
compensation for services performed and is undoubtedly not a transfer "without
reasonable equivalent value."

However, Ms. Daniel was not paid wages. As alleged in paragraphs 40, 42,
43, and 46 of the Amended Complaint of AGS, Inc., the tax returns for the years
2006, 2007 and 2008, prepared by Mr. Frasier, and signed and submitted by

Georgia D. Daniel to the Internal Revenue Service all reflect that a distribution to shareholders of $79,000; $144,000; and $185,675, or a total of $418,675 was paid to a shareholder. On the premise that these returns were prepared, that is that Ms. Daniel was the shareholder, then the $418,675 was paid by AGS, Inc., to her as a distribution to a shareholder.

If there is a distribution to a shareholder of a dividend, that is a share of profit, the transfer is unobjectionable. However, where the transfer is made without the existence of a profit, that is when creditors remain unpaid, and the remaining assets make it unlikely creditors will be paid, the transfer to a shareholder is "without reasonable equivalent value" and where creditors cannot be paid going forward, then there is adequate proof of a recoverable transfer under the West Virginia Uniform Fraudulent Transfer Act.

Recovery against Ms. Daniel, who received the transfer, follows the pattern described above for "loan payments" made to Dr. Saoud. But the Plaintiff has settled with Ms. Daniel, so no further recovery was sought from her at trial. Appellant did contend that Mr. Saoud was liable for the monies paid to Ms. Daniel by AGS, Inc.  A transfer includes an "indirect" transfer under W.Va. Code § 40-1A-1(*l*). Transfers to Ms. Daniel indirectly benefitted Mr. Saoud by giving him a plausible explanation that he was honoring the consent decree with the United States of America.

9

If Ms. Daniel was not the true shareholder of AGS, Inc., then the distributions to her characterized as a withdrawal of a dividend by shareholder are properly understood as distributions to the true shareholder, Mr. Saoud, and then a subsequent transfer to Ms. Daniel by him. Under W.Va. Code § 40-1A-8(b) Dr. Saoud is liable as the initial transferee and Ms. Daniel would have been liable as the subsequent transferee, not in good faith. There was of course a settlement with Ms. Daniel, but the Appellant believed Mr. Saoud to be liable for the $418,675 so distributed.

The claims were not significantly disputed by Mr. Saoud. He defended solely on statute of limitations grounds.

## Rulings of the District Court

On January 28, 2015 the District Court denied the Bankruptcy Trustee's motion for summary judgment and held that the claim of adverse domination was not adequately demonstrated. At the conclusion of the trial, the District Court refused to credit tolling on the basis of adverse domination from the facts established in this case. (J.A. 319 and 331-332)

During the Rule 50 conference, the District Court held that the limitation of actions provision prohibited any recovery for the 2008 payment of $50,000 to Mr. Saoud by AGS, Inc., on the grounds that the "original commitment" was in 2006. (J.A. 332-342)

10

The District Court ruled in her opinion of January 28, 2014 that a cause of action under the West Virginia Uniform Fraudulent Transfer Act was a contract claim and would not support a cause of action for civil conspiracy which only applied to torts. This ruling was specifically made in the context of a motion for summary judgment by Dr. Scott. (J.A. 133). The ruling was extended to claims against Mr. Saoud at the pretrial conference of February 18, 2015. There the Court made clear that the ruling was intended to apply to claims against Mr. Saoud, also. (J.A. 272- 275).

## Summary of the Argument

The District Court erroneously concluded that the Doctrine of Adverse Domination did not apply to causes of action brought by the Bankruptcy Trustee. That doctrine, like the doctrine of discovery, permits a corporation which has been the victim of wrongdoing by the very fiduciaries that should pursue claims against wrongdoers tolls the limitation of action provisions of the West Virginia Uniform Fraudulent Transfer Act. That conclusion was the conclusion of the United States Court of Appeals for the Tenth Circuit in two unpublished cases which specifically applied the doctrine of adverse domination to claims under the Utah Uniform Fraudulent Transfer Act.  Such an interpretation is entitled to significant weight under a provision of the West Virginia Uniform Fraudulent Transfer Act providing for uniformity of  interpretation of the Uniform Act in different States.

11

Assuming that the foregoing analysis is in error, the District Court also erred in holding that a payment made in 2008 was barred by the limitation of actions provision of the West Virginia Uniform Fraudulent Transfer Act. This error occurred when the District Court held that the 2008 payment was required under a contract signed in 2005, and the limitation of actions on the 2008 payment began in 2005. This analysis is erroneous. The 2005 document was of dubious validity. The payment was not required. There was no consideration for the payment. Suit was timely.

The District Court erroneously concluded that a cause of action for a violation of the West Virginia Uniform Fraudulent Transfer Act sounded in contract and not in tort. The erroneous characterization led to dismissal of a cause of action for civil conspiracy.

**Standard of Review**

The issues raised by the Appellant are all issues of law. Consequently, review is de novo. Guttman v. Construction Program Group (In re: Railworks Corp.), 760 F.3d 398 (4th Cir. 2014)

12

**Argument**

Did the District Court erred when it concluded that the Doctrine of Adverse Domination did not toll the Statute of Limitations/Repose under the West Virginia Uniform Fraudulent Transfer Act?

Adverse domination is a legal principle associated with the pursuit of fraud charges against the former principals of artificial entities. Normally, the principals of an artificial entity have a fiduciary duty to the entity to act loyally to the entity and with the best interest of an entity in mind. Thankfully, most principals carry out such duties faithfully. However, there are a nefarious few who use positions of authority within an artificial entity to loot and steal for their own purposes. Such acts are of course actionable. But often the difficulty with obtaining justice is that the persons who the entity should sue are the same persons who should bring the litigation for the artificial entity. Where the persons with the fiduciary duty to pursue claims for wrongdoing on behalf of an artificial entity against are the same persons who have committed the wrong doing, the doctrine of adverse domination precludes any applicable limitation on suit suit until the artificial entity is freed from the control of the corrupt.

Adverse domination was specifically recognized as part of the law of West Virginia in Clark v. Milam, 192 W.Va. 398, 452 S.E.2d 714 (1994)(Recognizing that statute of limitations claims on adverse domination claims of a corporate entity were tolled so long as domination existed. The corporation had no knowledge of

13

the actions of its own officers who acted in opposition to the interests of the entity and in violation of their duty of loyalty.  Appointment of Insurance Commissioner as Receiver restored the entity to independence, and on discovery of historical wrongdoing, the "discovery rule" started the statute of limitations .) <u>See also</u>, <u>Clark v. Milam</u>, 872 F. Supp. 307 (S.D. W.Va. 1994).

In the instant case, the Bankruptcy Trustee moved for summary judgment against Mr. Saoud for actions which the Trustee asserted were actions to loot AGS, Inc., to the detriment of the entity. Specifically, the Trustee claimed that the corporation had a duty to pay creditors, and that Mr. Saoud had acted to prevent such payments by taking monies due to creditors and using those monies to benefit himself and others.

The District Court denied the motion for summary judgment. In denying relief, the District Court denied the view of the Bankruptcy Trustee that he had four years from his appointment to bring suit. It held instead that the provisions of the West Virginia Uniform Fraudulent Transfer Act, specifically W.Va. Code § 40-1A-9 created a hybrid limitation of actions. In part, the District Court ruled that there was a one year traditional statute of limitations. The District Court further held that the remainder of the statute created a four year statute of repose which commenced before the appointment of the Trustee

The District Court was willing to consider issues of equitable tolling vis a vis the ordinary statute of limitations, but concluded that the statute of repose reflected a public policy not to permit equitable tolling of a statute of repose on any grounds. As a consequence, the District Court limited the proof that could be offered at trial.

While the decision of the District Court was the result of a studied analysis, the conclusions reached are directly at odds with several decisions[5] of the United States Court of Appeals for the Tenth Circuit. For example, in Farmers and Merchants National Bank v. Bryan, 962 F.2d 1520 (10th Cir. 1990) and in Federal Deposit Insurance Corp. v. Appling, 992 F.2d 1109 (10th Cir. 1993) the Court of Appeals held that the control of an entity by wrongdoers functioned, like the discovery rule, to prevent the corporate entity from knowing it was being looted by its own fiduciaries. More recently, and particularly legally similar are the

---

[5] The United States Court of Appeals for the Fourth Circuit had identified adverse domination as part of the common law in White v. Federal Deposit Insurance Corp., 122 F.2d 770 (4th Cir. 1941) cert denied 316 U.S. 672 (1942). There the Court wrote; "It is argued that the statute did not run in favor of the directors because, it is said, they controlled the corporation through a majority of stock ownership and control of the directorate and there was consequently no one to sue them." The Court reasoned that "notice to the directors who were responsible for the diversion could not be held discovery by or notice to the corporation, . . . " but the Court concluded that there was sufficient notice to the body of shareholders and to the Comptroller of the Currency that the corporation did have notice. While this case usefully recites a legal principle, the decisions of the Tenth Circuit, which are generally in accord, are more specifically on point.

unpublished decisions in <u>Wing v. Dockstader</u>, No. 11-4006 (10th Cir. , June 6,

2012) and in <u>Wing v. Buchanan</u>, No. 12-4123 (10th Cir. August 9, 2013).[6] In those

cases, the Tenth Circuit found the principle of adverse domination applicable to

preserve the power of a bankruptcy trustee to achieve redress under the Utah

version of the Uniform Fraudulent Transfer Act. That act, like its West Virginia

counterpart, had a statute of limitations and statute of repose component.[7] But

again, relying on the notion of when did an entity discover it was being looted, the

Court held that the knowledge of the fiduciaries engaged in wrongdoing was not

attributable to the corporation.  The principles of the discovery rule, clearly part of

the logic of the West Virginia Supreme Court's analysis in <u>Clark</u>, find expression

here.

Finding that principles of adverse domination were inapplicable to what the

District Court characterized as a statute of repose in the Uniform Fraudulent

Transfer Act was error. To preserve the usefulness of the West Virginia Uniform

---

[6] In citing an unpublished opinion, the Appellant recognizes that the opinion is only valuable to the extent it is independently persuasive.

[7] Ordinarily, the construction of the laws of one State are not binding in other jurisdictions. However, the Uniform Fraudulent Transfer Act contains provisions that instruct courts to afford deference to rulings of similar legislation in other States to foster a more uniform application of such laws. <u>See</u> W.Va. Code § 40-1A-11 ( This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it).

Fraudulent Transfer Act in an insolvency setting, Appellant urges reversal of this

holding of the District Court.

Appellant notes that in addition to succeeding to the powers of a corporate

entity in 11 U.S.C. § 541(a)(1), a bankruptcy estate, and its representative a

Bankruptcy Trustee, possesses additional powers. Of particular relevance here, the

bankruptcy estate has the power under 11 U.S.C. § 544(a)(2). Those are the powers

which would be held by a hypothetical judicial lien creditor who came into

existence at the moment of the filing of the bankruptcy petition. In addition, the

Bankruptcy Trustee had the power under 11 U.S.C. § 544(b)(1) that any real

creditor held to avoid a transfer.  These powers confirm that the Trustee,  both as

the successor to the corporation, and in combination with the augmentation of the

powers ordinarily held by creditors to clawback assets improvidently dissipated,

would ordinarily not be constrained in any way from making recoveries under

statutes of limitation or statutes of repose where there has been adverse domination

prior to a Bankruptcy Trustee's appointment.

Assuming that the doctrine of adverse domination should not apply as
argued above, did the District Court err in applying the Statute of
Limitations/Repose as construed by the District Court to find that evidence of a
transfer in 2008 was outside the Statute of Limitations/Repose because it was a
payment due under what purported to be a contract signed in 2005, even though
said contract was illegal?

While fraud is a discrete cause of action, fraud schemes are widely varied. It

cannot be realistically be denied that what are fraudulent practices are limited only

by the ingenuity of man to cheat his fellow man. In this regard, Mr. Saoud

attempted something clever. His scheme was so confusing, that the District Court's

application of the law was itself clouded by the confusion.

As noted earlier, Mr. Saoud agreed to be debarred in 2005 from participation

in government programs for the provision of health cares services as a result of

otherwise unresolved allegations of over billing. In 2005, he purportedly sold his

interest in AGS, Inc., a corporation through which Mr. Saoud had formerly

conducted his osteopathic practice by selling his practice to Georgia Daniel, his

nurse practitioner. Several things were wrong with the sale.

Georgia Daniel agreed to finance the sale but was not to be personally liable for

payment of the purchase price. Instead, AGS, Inc., was to be solely liable. While

AGS, Inc., would have to pay, it could not benefit. It could not buy itself.

Moreover, it wasn't at all clear that Mr. Saoud really surrendered control. In

some ways, it looked like he had. Georgia Daniel began to sign important papers ,

including the tax returns, on behalf of the entity. To some entities she identified

herself as the owner.

Yet, in other ways, the efficacy of the transfer was not clear at all.

Significant decision-making, including as it finally appears the choice that AGS,

Inc., should file for bankruptcy relief in 2009 continued to be exercised by Mr.

Saoud. He orchestrated  financial transactions involving himself. He seems to have

directed the bankruptcy filing. Moreover, the sale of an osteopathic practice to a person other than a licensed osteopath was illegal under West Virginia law. W.Va. Code § 30-14-9b(a). So what was really true was being disguised.

There is no doubt that the ambiguity benefitted Mr. Saoud in convincing government officials that he was honoring the terms of his debarment agreement. It also benefitted Mr. Saoud by providing a pretext for him to collect monies, installment payments on his contract of sale, from AGS, Inc.

The Bankruptcy Trustee sued on October 13, 2011. Within four years of that date, in 2008 AGS, Inc., according to its tax returns, paid Mr. Saoud $50,000. [8] The District Court ruled that the effective date of that payment for statute of limitations purposes was in 2005 in an apparent effort to give precedential legal effect to the unpublished ruling of this Court in LaRosa v. LaRosa, Nos. 11-1234 and 11-1306 (April 30, 2012). (Transcript of Rule 50 proceedings 3/2/15 at pages 30-40.)This exercise, while well-intentioned, was erroneous.

In LaRosa, the Court held that a pledge was effective when made. Subsequent advances under a pledge were part of the original pledge and the

---

[8] Appellant also contended that payments by AGS, Inc., to Mr. Saoud shown on relevant tax returns as having been made in 2006 and 2007 were actionable. Such a conclusion depends on prevailing on the adverse domination theory articulated above. However, even if Appellants views on adverse domination are erroneous, the 2008 payment would have been paid within four years of the filing of the complaint. Only by finding the limitations period began in 2005 was no recovery for the 2008 payment possible.

statute of limitations was governed by the date of the pledge. The District Court concluded that applying LaRosa meant that the 2005 "sales transaction" had bound AGS, Inc., to make payments, including the 2008 payment, and as a consequence the statute of limitations for the 2008 payment began to run in 2005.

There are significant differences between the AGS transactions and those in LaRosa. First, the purported sale transaction from Mr. Saoud to Ms. Daniel is of dubious legality. Am osteopath cannot transfer a medical practice to a non-osteopath under West Virginia law. AGS, Inc., did not separately execute any document obligating it as a party to the 2005 transaction. AGS, Inc., obtained no consideration for itself from the 2005 transaction. AGS, Inc. did however surrender monies in 2008 to Mr. Saoud for which it received no reasonably equivalent value. Those monies were a payment designed to benefit Mr. Saoud, and to render AGS, Inc., unable to pay its legitimate obligations in 2008. Conveniently, for Mr. Saoud it also disguised his receipt of benefits from federal health benefit programs in violation of his debarment. The cause of action to recovery these funds was not time barred.

Did the District Court err in concluding that a cause of action for Civil Conspiracy under West Virginia law could not be based on a violation of the West Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove a subjective violation of said statute, that is with "actual intent to hinder, delay or defraud?"

In <u>Clark v. Milam</u>, 192 W.Va. 398, 452 S.E.2d 714 (1994) the West Virginia Supreme Court of Appeals held that the doctrine of adverse domination was applicable to tort claims. There the looting of a bank by its officers was pursued in tort. Fraud is clearly a tort. A statute that makes actionable a transfer made with "actual intent to hinder delay or defraud creditors" as does W.Va. Code § 40-1A-4(a)(1) seems to be a codification of a cause of action for fraud.

However, the District Court concluded in its opinion of January 28, 2014 that said statute set forth a claim in the nature of "contract." That conclusion caused dismissal of the Appellants cause of action for civil conspiracy against Dr. Scott.[9] After that conclusion was announced, Mr. Saoud made a claim for relief on this basis which was contested by the bankruptcy trustee.

The conclusion that a cause of action under the West Virginia Uniform Fraudulent Transfer Act sounds in contract and will not support a cause of action for civil conspiracy at West Virginia law is erroneous.

---

[9] As to Dr. Scott no claim of error is made in this appeal. The District Court also found a procedural default to be applicable. That default is an independent basis for decision and is not contested in this appeal.

In originally ruling for Dr. Scott the District Court seemed persuaded by the decision in F.D.I.C. v. S.Prawer & Co., 829 F. Supp. 439 (D. Me. 1993) that an UFTA claim arose in contract. Additional support for that view exists, see e.g., Folmar & Associates, LLP v. Holberg, 776 So.2d 112 (Ala. 2000)(no conspiracy liability under the UFTA in Alabama). However, most courts to have addressed the issue have concluded that a conspiracy claim exists for a UFTA violation and recognizes a violation of the UFTA as sounding in tort. These include: McElhanon v. Hing, 151 Ariz. 728 P.2d 256 (Ariz. App.1995) aff'd 151 Ariz. 403 (1986); People's Loan Co. v. Allen, 199 Ga. 637, 34 S.E.2d 811 (Ga. 1945); Valvanis v. Milgroom, 529 F. Supp. 2d 1190 (D. Haw. 2007); Fischer v. Brancato, 147 S.W.3d 794 (Mo. App. 2004); Banco PopularNorth America v. Gandi, 184 N.J. 161, 876 A.2d 253 (N.J. 2005); Jakobitz v. Ron Horse Business Services, LLC, 208 Or. App 515, 145 P.2d 277 (2006); Chu v. Hong, 185 S.W.3d 507 (Tex. App., 2006) rev'd on other grounds, 185 S.W.3d 441 (2008); Chepstow Limited v. Hunt, 381 F.3d 1077 (11th Cir. 2004)(applying Georgia law); and, Diamond v. Vickery (In re: Vickery), No. 12-cv-01891-MSK (D. Colo., January 26, 2014)(applying Florida law).

Plaintiff notes that W.Va. Code 40-1A-10 expressly indicates that it does not displace additional principles of law, including, but not limited to, those articulated. While not articulated, civil conspiracy would appear to be

supplementary principle of West Virginia law. In several of the above cases, that principle was specifically relied upon.

The essence of this statute is make actionable acts undertaken with "intent to hinder, delay or defraud." W.Va. Code § 40-1A-4(a)(1). The items which may be considered in W.Va. Code (b) have been described as "badges of fraud." Nicholas Loan & Mortgagem Inc. v. W.Va. Coal Co-Op, Inc., 209 W.Va. 296, __, 547 S.E.2d 234, 239-40 (2001). Fraud is a tort. Plaintiff would contend that the West Virginia Supreme Court of Appeals is more likely than not to rule that civil conspiracy is a viable cause of action when plead in combination with the WV UFTA because the WV UFTA establishes a tort claim.

Dismissal of the conspiracy claim against Mr. Saoud was error.

## Conclusion

WHEREFORE, the Appellant asks that this Court identify the correct principles of adverse domination as applicable to claims under the West Virginia Uniform Fraudulent Transfer Act and the limitations of action under that statute, and that the judgment of the District Court be vacated and the District Court be instructed to conduct additional proceedings.

23

RESPECTFULLY SUBMITTED,

s/ *Martin P. Sheehan*

Martin P. Sheehan, Esq.

**Martin P. Sheehan, Esq.**
**W.Va. Bar No. 4812**
**SHEEHAN & NUGENT, P.L.L.C.,**
**41 Fifteeenth St.**
**Wheeling, WV 26003**
**(304) 232-1064**
**(304) 232-1066 fax**

**Patrick S. Cassidy, Esq.**
**W.Va. Bar No. 671**
**Cassidy, Cogan, Shapell & Voegelin, L.C.**
**1413 Eoff St**
**Wheeling, WV 26003**
**(304) 232-8100**
**(304) 232-8200 fax**

## Certificate of Compliance

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,710*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: August 24, 2015                    */s/Martin P. Sheehan*

## Certificate of Service

I, Martin P. Sheehan, do certify that on August 24, 2015 service of the

foregoing Brief was served upon the following electronically by CM/ECF:

Paul J. Harris, Esq.
Counsel for Allen G. Saoud,

Law Offices of Paul J. Harris
15th and Eoff Sts.
Wheeling, WV 26003

William A. Kolibash, Esq.,
Counsel for Fred A. Scott

Phillips, Gardill, Kaiser and Altmeyer, PLLC,
61 Fourteenth St.,
Wheeling, WV 26003

*/s/Martin P. Sheehan*