No. 15-1338

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**Martin P. Sheehan, Trustee of the**
      **Bankruptcy Estate of AGS, Inc.,**
            *Appellant*
      **v.**

**Allen G. Saoud**
            *Appellee*

## ON APPEAL FROM THE UNITED STATES
## DISTRICT COURT FOR THE NORTHERN DISTRICT
## OF WEST VIRGINIA - (Keeley, J.)

## REPLY BRIEF OF THE APPELLANT

**Martin P. Sheehan, Esq.**

**W.Va. Bar No. 4812**

**SHEEHAN & NUGENT, P.L.L.C.,**
**41 Fifteeenth St.**
**Wheeling, WV 26003**
**(304) 232-1064**
**(304) 232-1066 fax**

**Patrick S. Cassidy, Esq.**

**W.Va. Bar No. 671**

**Cassidy, Cogan, Shapell & Voegelin, L.C.**
**1413 Eoff St**
**Wheeling, WV 26003**
**(304) 232-8100**
**(304) 232-8200 fax**

# Table of Contents

**Page**

Table of Authorities ................................................................. iii

Statement of the Issues ............................................................. 1

Standard of Review .................................................................. 1

Argument ............................................................................ 2

    Issue 1 ........................................................................ 2

        Did the District Court err when it concluded that the Doctrine
        of Adverse Domination did not toll the Statute of
        Limitations/Repose under the West Virginia Uniform
        Fraudulent Transfer Act? ................................................ 2

    Issue 2 ........................................................................ 3

        Did the District Court err in applying the Statute of
        Limitations/Repose as construed by the District Court to find
        that evidence of a transfer in 2008 was outside the Statute of
        Limitations/Repose because it was a payment due under what
        purported to be a contract signed in 2005, even though said
        contract was illegal? .................................................... 3

    Issue 3 ........................................................................ 6

        Did the District Court err in concluding that a cause of action
        for Civil Conspiracy under West Virginia law could not be
        based on a violation of the West Virginia Uniform Fraudulent
        Transfer Act even where plaintiff attempted to prove a
        subjective violation of said statute, that is with "actual intent to
        hinder, delay or defraud?" ............................................... 6

Conclusion .......................................................................... 9

i

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Page(s)**

## Cases

Banco PopularNorth America v. Gandi,
 184 N.J. 161, 876 A.2d 253 (N.J. 2005)..........................................................8

Chepstow Limited v. Hunt,
 381 F.3d 1077 (11th Cir. 2004) ........................................................8

Chu v. Hong,
 185 S.W.3d 507 (Tex. App. 2006), rev'd on other grounds,
 185 S.W.3d 441 (2008)..........................................................8

Diamond v. Vickery (In re: Vickery),
 No. 12-cv-01891-MSK (D. Colo., January 26, 2014).....................................8

Fischer v. Brancato,
 147 S.W.3d 794 (Mo. App. 2004) ........................................................8

Guttman v. Construction Program Group (In re: Railworks Corp.),
 760 F.3d 398 (4th Cir. 2014) ........................................................1

Jakobitz v. Ron Horse Business Services, LLC,
 208 Or. App. 515, 145 P.2d 277 (2006) ........................................................8

LaRosa v. LaRosa,
 Nos. 11234 and 11-1306 (4th Cir. April 30, 2012) ......................................4, 6

McElhanon v. Hing,
 151 Ariz. 728 P.2d 256 (Ariz. App.1995), aff'd,
 151 Ariz. 403 (1986)..........................................................8

People's Loan Co. v. Allen,
 199 Ga. 637, 34 S.E.2d 811 (Ga. 1945) ........................................................8

United States v. Saoud,
    No. 14-4288 (Dec. 19, 2014)(unpublished)......................................................5

Valvanis v. Milgroom,
    529 F. Supp. 2d 1190 (D.Haw. 2007)............................................................8

**Statutes**

W.Va. Code § 30-14-9b(a)...............................................................................5

W.Va. Code § 40-1A-1, et seq. .......................................................................7

W.Va. Code § 40-1A-9 ....................................................................................3

W.Va. Code § 40-1A-11 ..................................................................................7

## Statement of the Issues

Did the District Court err when it concluded that the Doctrine of Adverse Domination did not toll the Statute of Limitations/Repose under the West Virginia Uniform Fraudulent Transfer Act?

Did the District Court err in applying the Statute of Limitations/Repose as construed by the District Court to find that evidence of a transfer in 2008 was outside the Statute of Limitations/Repose because it was a payment due under what purported to be a contract signed in 2005, even though said contract was illegal?

Did the District Court err in concluding that a cause of action for Civil Conspiracy under West Virginia law could not be based on a violation of the West Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove a subjective violation of said statute, that is with "actual intent to hinder, delay or defraud?"

## Standard of Review

The issues raised by the Appellant are all issues of law. Consequently, review is de novo. Guttman v. Construction Program Group (In re: Railworks Corp.), 760 F.3d 398 (4th Cir. 2014). While not overtly contested by the Appellee, (there is no standard of review in Appellee's brief, nor is the concept discussed in any argument) the approach taken by Appellee to some issues appears at odds with this concept.

## Argument

### Issue 1

#### Did the District Court err when it concluded that the Doctrine of Adverse Domination did not toll the Statute of Limitations/Repose under the West Virginia Uniform Fraudulent Transfer Act?

Appellee contends that this issue was waived by the Bankruptcy Trustee. The Trustee moved for summary judgment in this case. That motion asserted the existence of adverse domination. (J.A. at 85). The District Court denied the motion for summary judgment in a written opinion. (J.A. at 111). In the pretrial materials submitted by the Bankruptcy Trustee, this issue remained. (J.A. at 198). The District Court made clear at the pretrial hearing that her view of the tolling of a statute of repose was fixed.

The single remark of counsel which Appellee claims is a waiver is taken out of context. In response to comments of the District Court that "he [Mr. Saoud] just out right lied about no – about no ownership of property" counsel responded that adverse domination was not at issue.

In the context of this case, damages were sought for several different transfers. Included was a specific effort to set aside the taking of proceeds from a real estate sale of property titled to AGS, Inc. that occurred in 2005. This is the only issue which went to verdict. See Pretrial Conference Transcript at J.A. 242 and Jury Interrogatories at J.A. 230. Mr. Saoud had repeatedly denied that AGS,

Inc., owned any real estate. Under the District Court's view of the law, that type of concealment warranted application of the "discovery rule" component of the one year limitation in W.Va. Code § 40-1A-9. Trial of that issue proceeded to jury verdict. The principles of a statute of repose, and adverse domination were not necessary to that issue.

Appellee misconstrues the record. There was no waiver of adverse domination with respect to other damage claims previously ruled out of the case.

### Issue 2

**Did the District Court err in applying the Statute of Limitations/Repose as construed by the District Court to find that evidence of a transfer in 2008 was outside the Statute of Limitations/Repose because it was a payment due under what purported to be a contract signed in 2005, even though said contract was illegal?**

Under the District Court's view of the statute of limitations/repose (that is without equitable tolling), the record establishes that the Bankruptcy Trustee who was appointed in 2009 and brought suit in 2011 was held to have been late in bringing suit under a four year statute of repose to recover a transfer made to Mr. Saoud of $50,000 in 2008[1] because a "contract" for that payment was signed in

---

[1] Tax returns of AGS, Inc., for 2006, 2007 and 2008 showed payment of $100,000, $100,000 and $50,000 to Mr. Saoud. See amended complaint (J.A. at 54-56). While the Trustee sought all such funds, equitable tolling is necessary for relief in the years 2006, and 2007. It is less than four year from this payment in 2008 to the filing of the complaint in October of 2011 under any circumstances.

3

2005. Without "back dating" the transfer to 2005, that conclusion is clearly wrong. No part of 2008 is within four years of October 12, 2011.

The notion of "back dating" appears to have come from this Court's unpublished decision in LaRosa v. LaRosa, Nos. 11234 and 11-1306 (4th Cir. April 30, 2012). In LaRosa there was a dispute between family members over whether a pledge of securities that collateralized a line of credit payment made to satisfy an ordinary commercial loan to a bank were or were not fraudulent. It was clear that the Virgil B. LaRosa made a pledge of securities to a Bank for a line of credit in the name of a corporate entity in which Mr. LaRosa and his wife had complete ownership. This transaction occurred more than four years prior to suit being brought. Several years later, the line of credit was accessed and the proceeds used by the corporate entity. That occurred within four years of the suit being brought. The LaRosa Court found the pledge of the securities was beyond the statute of repose and that liability depended on that not being true.

LaRosa has no application to the facts of this case. Unlike the events there, Mr. Saoud created documents (in 2005) which only purported to be a sale of AGS, Inc, a company he owned to Georgia Daniel, his nurse practitioner. The purported sale was then used to conceal from government authorities Mr. Saoud's continuing control of AGS, Inc., in violation of the terms of his debarment agreement with the federal government. Under the terms of the debarment agreement Mr. Saoud was

4

prohibited from any involvement with a health care entity which was receiving government payment for having provided health care services. Cheating the government in this way was the gravamen of the indictment for which Mr. Saoud has been convicted. See United States v. Saoud, No. 14-4288 (Dec. 19, 2014)(unpublished).

The purported documents of sale were really a mirage. Sale of an osteopathic practice to a non-osteopath is prohibited under West Virginia law. See W.Va. Code § 30-14-9b(a). Thus the true owner of AGS, Inc.,was Mr. Saoud. The creation of a document in 2005 simply had no impact on the monies extracted from AGS, Inc. at any time.

Even had the sale to Ms. Daniel been lawful, in 2005, the contract of sale was still defective. The sale would have required AGS, Inc., to compensate Mr. Saoud for the sale of stock in AGS, Inc. Had the sale been lawful, the transfer of Mr. Saoud's stock to Ms. Daniel did not benefit AGS, Inc. Only Ms. Daniel could benefit. Requiring AGS, Inc., to pay Ms. Daniel's obligation to Mr. Saoud required a transfer for which AGS, Inc., received no consideration. Without consideration, there was no legal obligation to make payments in 2008. This activity was simply a continuation of the effort to defraud AGS, Inc., and its creditors, which had begun earlier in 2005.

When Mr. Saoud took monies from AGS, Inc., in 2006, 2007, and 2008, to compensate him for the sale of stock, he defrauded creditors, at the time he took the money. Assuming the sale was illegal, Mr. Saoud took money from an entity which he continued to own. Monies paid to him were not for the sale of stock, and a distribution to equity should only have occurred if AGS, Inc. were solvent. It was not.

Assuming the sale was somehow lawful, Mr. Saoud took money from an entity that had received, and would receive no consideration for the sale instead of having AGS, Inc. pay its true creditors. Either way, Mr. Saoud committed a fraud designed to loot the entity for his personal benefit while leaving creditors an empty shell.

Relying on LaRosa to "back date" the 2008 transfer of $50,000 to 2005 and outside the statute of repose (as applied) was error.

### Issue 3

**Did the District Court err in concluding that a cause of action for Civil Conspiracy under West Virginia law could not be based on a violation of the West Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove a subjective violation of said statute, that is with "actual intent to hinder, delay or defraud?"**

The District Court concluded that a cause of action for civil conspiracy cannot exist where the underlying claim is for a violation of the West Virginia Uniform Fraudulent Transfer Act. The District Court held that a claim for such a

6

violation of that statute does not sound in "tort" even though the statute codifies a species of fraud, and requires proof of "actual intent to hinder delay or defraud." The Appellee, Mr. Saoud, asserts that the District Court's reliance on cases identified by the District Court is a sufficient basis for this result.

Appellant, the Bankruptcy Trustee, notes first that the standard of review is not abuse of discretion, but is instead de novo. The issue is not whether the District Court conclusion has some legal support, but rather whether the District Court reached the correct legal conclusion. Appellant continues to assert the District Court erred.

Most importantly, the West Virginia Uniform Fraudulent Transfer Act, W.Va. Code § 40-1A-1, et seq. is part of a series of similar statutes adopted in most states. That statute directs Courts to rely for precedent not only to precedent with the state of enactment, but to other states adopting similar legislation. The goal is to have uniform implementation of a Uniform Act. See, W.Va. Code § 40-1A-11 (This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among states enacting it).

When one examines the weight of authority, causes of action for conspiracy to breach of the Uniform Fraudulent Transfer Act have been widely recognized. The weight of authority favors such a cause of action. Most courts to have addressed the issue have concluded that a conspiracy claim exists for a Uniform Fraudulent Transfer Act violation and recognizes a violation of the Uniform Fraudulent Transfer Act as sounding in tort. These include: McElhanon v. Hing, 151 Ariz. 728 P.2d 256 (Ariz. App.1995), aff'd, 151 Ariz. 403 (1986); People's Loan Co. v. Allen, 199 Ga. 637, 34 S.E.2d 811 (Ga. 1945); Valvanis v. Milgroom, 529 F. Supp. 2d 1190 (D.Haw. 2007); Fischer v. Brancato, 147 S.W.3d 794 (Mo. App. 2004); Banco PopularNorth America v. Gandi, 184 N.J. 161, 876 A.2d 253 (N.J. 2005); Jakobitz v. Ron Horse Business Services, LLC, 208 Or. App. 515, 145 P.2d 277 (2006); Chu v. Hong, 185 S.W.3d 507 (Tex. App. 2006), rev'd on other grounds, 185 S.W.3d 441 (2008); Chepstow Limited v. Hunt, 381 F.3d 1077 (11th Cir. 2004)(applying Georgia law); and, Diamond v. Vickery (In re: Vickery), No. 12-cv-01891-MSK (D. Colo., January 26, 2014)(applying Florida law).

The Appellee has ignored these cases. The reasoning of these cases is sound. A Fraudulent Transfer is a species of fraud. The statute primarily is designed to define a cause of action for defrauding creditors by making transfers designed to render persons and entities unable to pay their their just bills voidable. The statute recognizes two kinds of fraudulent transfers, ones where actual intent to defraud is

shown, and one where "badges of fraud" exist. Where specific badges of fraud defined in the statute are proven, intent to defraud is so conclusively presumed that proof of intent is not required. A showing of certain defined objective criteria, transfers while insolvent for less than equivalent value and/or to insiders, proves the case.

The statute is identified by a fraud moniker. It is the Uniform "Fraudulent Transfer" Act. Fraud is a tort.

On a <u>de novo</u> review, the District Court was wrong.

## Conclusion

WHEREFORE, the Appellant asks that this Court identify the correct principles of adverse domination as applicable to claims under the West Virginia Uniform Fraudulent Transfer Act and the limitations of action under that statute, and that the judgment of the District Court be vacated and the District Court be instructed to conduct additional proceedings.

RESPECTFULLY SUBMITTED,

s/ *Martin P. Sheehan*

Martin P. Sheehan, Esq.

**Martin P. Sheehan, Esq.**
**W.Va. Bar No. 4812**
**SHEEHAN & NUGENT, P.L.L.C.,**
**41 Fifteeenth St.**
**Wheeling, WV 26003**
**(304) 232-1064**
**(304) 232-1066 fax**

**Patrick S. Cassidy, Esq.**
**W.Va. Bar No. 671**
**Cassidy, Cogan, Shapell & Voegelin, L.C.**
**1413 Eoff St**
**Wheeling, WV 26003**
**(304) 232-8100**
**(304) 232-8200 fax**

## Certificate of Compliance

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*2,068*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 19, 2015          */s/ Martin P. Sheehan*

**Certificate of Service**

I, Martin P. Sheehan, do certify that on October 19, 2015 service of the

foregoing Brief was served upon the following electronically by CM/ECF:

Paul J. Harris, Esq.
Counsel for Allen G. Saoud,

Law Offices of Paul J. Harris
15th and Eoff Sts.
Wheeling, WV 26003

*/s/ Martin P. Sheehan* _____